Mr. Ossette. Thank you, Your Honors, and may it please the Court, Missouri law provides an expeditious and confidential mechanism by which a pregnant, unemancipated minor may obtain an abortion without parental consent. In this case, Jane Doe sought an abortion using that procedure, but her local courthouse, faced with an unprecedented request, didn't know what to do. So the clerk of the court, the sole defendant in this case, Michelle Chapman, went to the judge in the juvenile division who would likely handle the case and asked for his advice. The judge, according, in our view, according to Ms. Chapman's, in our view, uncontradicted deposition testimony, the judge told Ms. Chapman to tell Ms. Doe that her parents would be notified of the hearing on her application for judicial bypass. Doe sued Ms. Chapman, alleging a violation of her purported 14th Amendment right to an abortion without parental notice. Ms. Chapman moved for summary judgment on immunity grounds, but the district court denied that motion in this case. In our view, respectfully, the district court erred in two fundamental respects. First, the court erred in denying Ms. Chapman quasi-judicial absolute immunity. In our view, Ms. Chapman's affirmative evidence that the district court, excuse me, the circuit court directed her to provide notice to Ms. Doe's parents was not contradicted by the recollection, inconclusive evidence that he had no recollection whatsoever of giving her this directive. In our view, that wasn't enough to create a genuine dispute of material fact as a matter of law. And we cited plenty of cases for the court in this context for summary judgment purposes that under the Supreme Court's Anderson v. Liberty lobby decision, there must be a quote-unquote sufficient disagreement to generate a factual dispute. And in this case- Well, counsel, let me interrupt you. Yes, Your Honor. Now, you know from the Missouri Supreme Court case in September that that clerk does not work for the judge, correct? He cannot suspend her. He cannot take serious discipline against her. You know the case I'm referring to, I'm sure, right, Alsbury v. Flynn? I do know the Alsbury case very well, Your Honor. I think I would make a key distinction is that in that case, Your Honor, the Supreme Court did not directly address the question as to whether or not, there was no dispute that the clerk herself was an arm of the circuit court of the Missouri Supreme Court. Counsel, be careful. That's not assumed at all. They say she's a separate elected official. She say he can't suspend her. He has to seek formal ouster. He has to bring misdemeanor charges because she's elected and he's elected, separately elected. So don't you have a problem off the bat getting to judicial immunity? I don't think so, Your Honor. I think there were certainly concerns about the elected nature versus the unelected nature, but ultimately the court, consistent with its precedent in the 21st Judicial Circuit case from 1995, and many other cases where the circuit clerk is in fact a part of the circuit court, is not an independent branch of the circuit court. She is supervised by the circuit judge. Now, certainly, I just want to be very clear in this case that the Alsbury case did deal with general administrative authority for the presiding judge in the circuit. Now, I will note that, Your Honor, when you sat on the Missouri Supreme Court, there was a very persuasive decision in the Heinen case which said that the presiding judge does have plenary and very broad administrative authority. All I'm saying is the Missouri Supreme Court in Alsbury did not cast doubt on its prior decisions that for purposes of that context, the circuit clerk is in fact part of the circuit judge, is supervised by the circuit judge. And so, consistent with the Second Circuit, at least in this context, when it comes to quasi-judicial immunity, the circuit clerk, the clerk, and the state court judge are treated as one. That's the Oliva case from the Second Circuit. Now, my other question is, by the way you've set up the case, don't you assume away the real issue here? Because the judge says, I wouldn't normally do it that way, I don't recollect it at all. It's about a year and a half later. You know, that's surely a conflict. What do you have to say to that? Your Honor, I think all I would say is his testimony viewed in context, at best, it constitutes a vague denial and certainly a memory lapse, you're right, with the year. Now, Your Honor, I will say, on the one hand, all I'm saying is the fact that she comes in unequivocal, without any kind of hesitation whatsoever, that he, in fact, told her this, she has no other reason to say otherwise, and he comes in saying, I don't recall. Yes, usually he says, that's not how we do things, but he doesn't specifically deny or otherwise contradict that very precise affirmative testimony. And in our view, just with the Anderson case in mind, Your Honor, that's not the kind of unequivocal kind of testimony that does create a sort of factual dispute. Now, Your Honor, I'm willing to, I do, as I was about to submit at the beginning of this intro, I do think there are two independent ways of disposing this case. The first is obviously the quasi judicial immunity review, and if you all disagree with me on that and think that there was enough of a factual dispute, then we don't need to reach that question. Well, I want to press you, before you get to qualified immunity, a little more on the last statement. That was what I was interested in, what Judge Benton mentioned. He says, it's not how I would usually operate. Now, we have a case called Smith v. Arrington Oil and Gas from 2012 that says habit evidence like this is not enough to create a genuine issue of material fact. But I wonder whether this might be different in the sense that it's coupled with, I don't recollect, and that's not usually how I would do things. Does that make it any, does that make any difference in your view? I don't think it's enough evidence to constitute a habit, Your Honor, but again, I do recognize the court's limited jurisdiction in this role with respect to how much is this truly a genuine dispute or not. I guess all I'm saying is, as a matter of law, any witness who just simply says, whether it's a judge or otherwise, who just simply says, I have no recollection, and you compare that with an affirmative statement from the only other person in that conversation to say, actually, you did tell me to do this, and she was even asked by the other side in her testimony, well, would you have told her parents anyway? No, I don't have time to be a potstir, right? I mean, she had no other sort of reason to tell another story, essentially. All I'm saying is, in this context, I don't think it's enough to show a habit, or this is how he would usually do things, but I'm willing to at least assume for present purposes that it may very well, that this court may very well have been okay constituting, this constituting a genuine dispute of fact, and therefore we would move on to the qualified immunity analysis. I just don't think it's enough of an actual habit or something that a judge usually would do for present purposes. Alternatively, we do have a qualified immunity ground, as Your Honor suggested, and really the bottom line here, Your Honor, is that this notion, the question before the court in the Ashcroft case, in many other cases, the Ashcroft-Alkit case that is for qualified immunity purposes, the relevant question is whether or not the constitutional question before Ms. Chapman was quote unquote beyond debate, and in this case, Your Honor, we would submit that it wasn't beyond debate, it wasn't clearly established, because the Supreme Court has not weighed in on this precise question of whether or not the Bilotti-like protections that are usually applied in the parental consent context have been extended to the parental notice context. The Supreme Court has not weighed in on this issue. The circuit courts, to be sure, the Eighth Circuit does have a decision from 1995 on this issue, but it is split with the Fourth Circuit's later decision, en banc decision from Judge Ludig in that case. So we do think that the sharp divide in the circuits and the fact that the Supreme Court has not weighed in on this precise issue makes it enough of a not something that is in fact beyond debate for purposes of qualified immunity, and our position is that was it enough to give her notice that this conduct was in fact unconstitutional? Well, let me ask you this. So I'm not worried really about the Supreme Court case. I am generally, but in this area, they're all over the place. The Akron case sort of conflicts with Bilotti and Justice Powell's opinion on Bilotti, but when you go to Miller, which is the 1995 case you reference, rightly or wrongly, it is absent. I want to know if you agree. It is absolutely crystal clear that you have to be able to bypass through the judiciary without even notifying the parents. Would you agree with that? At least I know you want to argue that the Fourth Circuit's different, but would you at least concede that? Certainly, Your Honor, I'm willing to stipulate that in the Eighth Circuit, Miller controls, and that is certainly a clear decision. I mean, Judge Arnold, a very well-respected judge in the Eighth Circuit, made it very clear that he viewed the Bilotti-like requirements apply to the parental notice context. I'm not disputing that, but again, from my standpoint, Ms. Chapman, who again is faced with an Eighth Circuit decision that says one thing and a Fourth Circuit decision that says something else, the Supreme Court has not sort of come in and broke that tie, if you will. I think she was entitled to view the Fourth Circuit's opinion as persuasive as Chief Judge Arnold's decision in Miller, in the Eighth Circuit decision in Miller, and it's unique in this context, Your Honor, because I agree, this is an unusual case because I'm not really aware of any other situation where you combine or there's an interplay between substantive abortion jurisprudence and the qualified immunity context, but I think what's even interesting in this case is Ms. Chapman is, again, an arm of the Circuit Court, the State Court in this case. Judge Benton, we talked a little bit about Missouri Supreme Court decisions. The Missouri Supreme Court has continuously held that Missouri State Court officials, Missouri State Court judges are bound by the pronouncements of the Missouri Supreme Court and the U.S. Supreme Court, and when it comes to Federal Circuit decisions, there are persuasive authority, and so she did have discretion or a decision, she did have two decisions that are, again, very persuasive, but they go in different directions, the Fourth Circuit on the one hand and the Eighth Circuit on the other hand, and if you look at Judge Ludick's decision, which, again, is very, very well written, as is Judge Arnold's, I think the key point that distinguishes the parental notice context from the parental consent context is Judge Ludick believes that the court made it very clear in Justice Kennedy's concurrence in Hoxton that when it comes to parental notice requirements or the parental notice context, the concerns in Bilotti over there being some absolute veto over the decision to get an abortion are just simply not present. I want to ask one more follow-up on this before you veer off to Judge Ludick, which is you bring up an interesting point, which is a matter of federalism. State courts are not bound by Federal Circuit Court decisions. I agree with that, but you've also got to establish, I think, to prevail, that we are not bound by our own precedent. In other words, you have to convince me that it's not clearly established for us in the sense of deciding this particular appeal, and I wonder what your thoughts are on that. The closest thing, and we did discuss this a little bit in the briefing, Your Honor, is I think there are really two responses to that question. The first is it's still unclear, especially latest with the Rivas decision from the Supreme Court in November, it's unclear whether or not Circuit precedent alone constitutes clearly established law and whether or not it's just simply Supreme Court precedent that can establish a clearly established law. Historically, the Supreme Court has just assumed without deciding that Circuit precedent was enough, and even in this context, if you take that as true, that a Circuit precedent or Circuit holding can be enough, even Judge Collett's concurring opinion in the Dillard case where he cites the Chestnut case, even in Chestnut, the court found that that was a right that was beyond debate because virtually every circuit that had addressed this question was uniform in finding that this had been a clearly established right in this context. So even if it is controlling, Your Honor, I think you still have to make the beyond debate inquiry. And in this case, when the courts are so sharply divided of this very precise issue, I think you can still have to consider that, take that into consideration when you're looking at Circuit precedent, even assuming that even constitutes clearly established law for this case, Your Honor. You probably need to reserve for rebuttal, Mr. Pesetti. If I may, Your Honor. Thank you. Yes. Thank you very much. Ms. Carney. May it please the Court. I am Molly Carney, representing the appellee, Jane Doe. Today, I will discuss why the District Court appropriately denied appellant Michelle Chapman quasi-judicial and qualified immunity at the summary judgment stage. Chapman, a Circuit Court clerk, imposed unconstitutional pre-hearing parental notification requirements that prevented Doe, a mature minor, from accessing a judicial bypass proceeding without parental involvement. This blatant violation of Doe's rights disregarded her ability to access proceedings with confidentiality, anonymity, and expediency. Minors like Doe possessed the clearly established right to access judicial bypass proceedings without mandatory pre-hearing parental notification. Well-established case law, including Miller, Bilotti, and Ashcroft, controls here. Bilotti provided that where parental consent to an abortion is required, as it is in Missouri, every minor must have the opportunity to go directly to a court and demonstrate her maturity or her best interests without first consulting or notifying her parents. Now, what did you say after without, counsel? What words did you use after without? Without first consulting or notifying her parents. That's language from... Well, it says without parental consultation or consent. Is that those words of the Supreme Court in Bilotti make a difference? I'll say them again if you want me to. It says without parental consultation or consent. There I said it right. Go ahead. Sure. So Bilotti was about consent and Missouri does have a parental consent statute. So there is the requirement that where consent is required, which it is here, there must be an opportunity for a judicial bypass process that is anonymous and confidential. Why does what Missouri require make any difference here? Aren't we looking at whether the right is clearly established as a constitutional matter? We don't care, in other words, if the clerk here violated state law, do we? The violation of state law here goes to the objective unreasonableness of the state clerk. The clearly established right is that that was established by Miller, the right of a mature minor to access judicial bypass proceedings. Well, counsel, where in the state law? I'm just looking. I'm narrow-minded. 188028. Where in there does it say, is there something that this clerk violated? The first violation was there is a duty of the clerk to assist the minor with the petition. Here, the clerk, rather than assisting the minor, refused to assist the minor. The other is that there was the invalidation by the Ashcroft court of previously existing notice requirements that were in the prior statute and are no longer in the statute. Yeah, but you wouldn't know that by reading the statute, would you? I understand a lawyer would. This clerk is not a lawyer for sure, right? Almost all of Martin, Missouri, right? Unknown whether she's a lawyer or not. However, the statute does not include notice requirements in contrast to many other statutes that do. And that was amended in 1986 before many of these clerks were born, right? Well, I'm not sure when this clerk was born. I know that's hyperbole. I get it. Right. But answer the serious part of the question. If you read the statute, I don't see anything in Missouri law that the that the clerk violated. Well, there's also nothing in the statute that says she couldn't discriminate on the basis of race or religion, but we know that's in the Missouri Constitution now. Go ahead. Proceed. Right. So there is a clearly established right here. That right was established in Miller. It was also established in Ashcroft, where the court said that it was unconstitutional to require parental notice in the Missouri statute. Following Ashcroft, the legislature expressly repealed those notice requirements. This court should respect the legislature's decision to remove those requirements consistent with constitutional law. A reasonable official would have known that she was violating those rights here when she required notice based on the plain language of the statute, which does not include notice requirements and also based on this well-established case law. What about opposing counsel's argument, though, that Miller, you know, it didn't bind the state court judge. Miller doesn't bind the state court judge. It doesn't bind certainly doesn't bind the clerk of court. And if they were to hear a case about this, they could decide whatever they wanted, you know, regardless of what Miller says. And so then how do we come in and say this is the whole circuit precedent can't create clear, clearly established law? How do we now come in and say it is clearly established and we're going to hold you liable in damages or you can be held liable in damages for not following our opinion? All officials are obligated to respect constitutional law regardless of where they are an official. And additionally, as to the Eighth Circuit precedent issue, we appellant addressed Dillard B.O. Kelly. Judge Collington's concurrence in that case addressed that a prior holding of the Eighth Circuit is sufficient to recognize a clearly established right. That concurrence also cited to Chestnut v. Wallace, which relied on Walker, another prior Eighth Circuit case for purposes of qualified immunity. Well, I've looked at those cases. I mean, Judge Collington's a smart judge, but he has only one judge who wrote in that particular case. And I went back and looked at those cases and they're not nearly as strong for Judge Collington's position as the position he was articulating. So what do we do when you I mean, I can't find a clear statement that says that we're that state officials are bound by prior Eighth Circuit opinions in the qualified immunity context. Well, the best I would say is that there are multiple cases in which the Eighth Circuit does rely upon its own precedent. Another is LeMay v. Mays from 2021, where there was no entitlement to qualified immunity based on a prior case. And if there was no ability to sue a court clerk in this case, there would be no remedy for the violation. Here, there was an unreasonable violation of Doe's rights. The state has no legitimate interest in subjecting a mature minor to this kind of a burden. It was ultimately an undue burden upon Doe's right to choose, which has been held unconstitutional in Miller and other cases under the Supreme Court and the Eighth Circuit. Additionally, the affirmative evidence presents genuine issues of material fact related to Chapman's ability to assert quasi-judicial immunity that are appropriate for a trial court determination. Well, let me ask you this. I'm going to walk you through what I find troubling about this because I want to focus attention. All of the statements on I don't recall, I can't remember all of those. Do you think those create by themselves, I'm going to ask you about another statement in a second, a genuine issue of material fact? They do create a genuine issue of material fact because there are statements that are both general regarding habit, but also there are statements that are specific to the issue. No, I'm not talking about habit evidence. I'm talking because I know that there is there. And I'm going to ask about the habit evidence, but just I don't recall. So somebody says you clearly said this. And another witness says, I don't recall. I don't recall ever doing that. Do you think that creates a genuine issue of material fact? It may not, but here we have more than the lack of recollection. We have Judge Cooksey testifying that he has no authority or jurisdiction until a case is filed. He did not. Yeah, that's the next thing I want. I want to bifurcate here. So that that is the hard part that he doesn't have authority to do it. And he says it's not how I usually operate. But we have a case and you may or may not be familiar with. I don't think it was briefed, but I'm not positive. Smith versus Arrington Oil and Gas was a Judge Grunder opinion. It's six sixty four after twelve away. And what it says is this type of evidence does not create a genuine issue of material fact as to whether the party did the same thing in the instant case. So it takes habit evidence. And as I usually don't do this and says that's not enough to show that he did or didn't do something in this particular case. What do we do with it? And I basically laid out the whole thing. What do we do with a statement like that? Because it looks like this is identical to the Arrington case. It's distinguishable here because we do have those general statements, but we also have specific statements as to this case. The judge also testified he would have looked at the law for an unfamiliar issue such as this, but he did not do so. He stated that he had an unfamiliarity with the bypass forms, these types of cases. He said the clerk is responsible for notices that he didn't direct the issue and some notices here. He had a memory of a young couple at the window, but no memory of Joe. Joe was at the court alone. Overall, there's various affirmative testimony that is specific to this case, not just about his habit, not just that this isn't how he would have operated under any circumstances, but that this is not how he operated in this case. And this is to be sure. I'm going to interrupt you to be sure I understand it. He says wouldn't have had any authority or his four or five words there. And you heard Mr. Ossetti and I talking before. Is it agreed in this case that he is not the presiding judge? He is the presiding judge. He was the presiding judge or he is not the presiding judge. I'm sorry, it's a position in Missouri. He either is or isn't the presiding judge. It's not a presiding judge. No. Was he an associate circuit judge? He was an associate circuit judge for one county, Randolph County, Randolph County precisely. And he did not provide. So have you did you brief the extent of his authority over the clerk? Yes, we addressed that he does not supervise the clerk. This was brought up in testimony. We also reference statutes as to their respective roles. And you didn't you didn't you didn't brief that. And of course, you did you agree for it before or after Allsbury versus Flynn, the September case of the Supreme Court? We did include a reference to Allsbury and proceed. Yes, and Allsbury is on point here. That case, of course, addressed the administrative authority of a judge and found that judicial immunity was improper where a judge was acting in an administrative capacity. Here, we don't have the judge even acting in a supervisory capacity over the clerk. But additionally, we have an administrative action by the clerk that would not be entitled to quasi judicial immunity. Chapman was required by the statute to assist with the preparation of notices. That was her administrative role. It was statutorily defined and it's not an adjudicatory action for a judge. There was no ability for a judge to make an order on this case because there was no case before the judge, because Chapman prevented the filing of the case. Let me ask you this, though. You know, this is a tough one because I don't know. I don't know the way the Missouri courts function nearly as well as Judge Patton and I wouldn't report to. But, you know, I'm going to if it deals with a filing requirement, a rule in my court. And I realize that this isn't this issue. And the clerk of court comes up and asks me, how would you file this? And I say, this is this is this is the rule in my court. This is how it needs to be filed. Why isn't that entitled to judicial immunity? And we've kind of held that it is in a whole series of cases. And so I'm trying to figure out why this doesn't fall into that category. I know nothing had been filed, but it's basically saying these are the rules in my courtroom. It would require an analysis of the functional analysis of the acted issue. So that specific filing of notices and it would require an express direction for there to be that sort of judicial immunity here. There's a dispute of fact and there is time and opportunity for the district court to consider whether the judge did actually give such a direction as to. OK, that's different. That's a different answer, I think, than than than precisely my question. I believe in a genuine issue of material fact, if what the clerk of court actually said is absolutely 100 percent true, Judge Cooksey told me to do this. I was checked with him, et cetera, et cetera. In that instance, leaving aside the genuine issue of material fact, wouldn't judicial immunity be available? Not necessarily, it would require an analysis of the function, the functional analysis essentially, and judicial acts are those involving the resolution of disputes or the adjudication of private acts. Issuing notices has nothing to do with the resolution of this dispute. It's just the filing of the case. And that's a ministerial act. It's not an adjudicatory act. Counsel, does the record reflect the personal relationship, if any, between this particular clerk and Judge Cooksey? There is evidence in the record related to his lack of supervisory authority over the go ahead. And as to his lack of discussion in this case, the reason I asked that, it's obvious in the Missouri Supreme Court cases that some clerks and judges, presiding judges, particularly, fight all the time and they fight to the point of trying to move each other from office. And others are, shall we say, very close allies in every regard. But now, do we have any of that on the record here? I hadn't seen it. I just thought of it this minute, by the way. Go ahead. I can't point you to a specific testimony, but that would be an appropriate issue for the district court to consider here in weighing the credibility and the testimony of witnesses at trial. But not raised so far? I can't point you to something specific. That's good enough. Not raised. Yes. Yeah. And, you know, there was no evidence here that this was something where the judge did not have a judicial bypass context or in another context. There's no evidence presented by Chapman, who has the burden here, that the judge would direct notices to be issued in any case. Chapman was the final decider here. She said that she called herself the final decider. She called herself the final decision maker. It was Chapman who decided to require pre-hearing parental notification. Chapman cannot be absolutely shielded for her clear violation of rights. We do request that you affirm the district court's denial of quasi judicial and qualified immunity. Remand for resolution of the outstanding factual disputes. Thank you. Thank you for the argument, Mr. Osete. Thank you, Your Honor. Mr. Osete, before you get started with your rebuttal, what about that last point? Wasn't this really even taking the testimony of the clerk at the clerk's at the clerk's word? Wasn't this really simply an opinion as to what the law is? And she got advice from from a judge in her county as to what the law is. It was not an action taken at the direction of the judge because the judge doesn't have the authority to change what the what the law is or to prescribe the way that the clerk performs her her duties. What if this is not a direction by the judge, but simply it's just an opinion of the judge as to what the law is? And in this case, the judge was wrong. Your Honor, I think there are two responses to that question. The first is the judge's directive, so to speak, to Miss Chapman that these notices be sent out to her parents, to those parents. There is this intersection between that directive and a opinion on the law or what the law requires, so to speak. Certainly, the judge is presumed to have known the law and what it is. But even in this context, in the qualified immunity context, and we cited the Pearson B. Callahan case for this proposition, Your Honor, even if the judge was mistaken as to what Missouri law requires, that still doesn't deprive any of these officials of quasi judicial immunity or excuse me, qualified immunity in this context. So I would say that there is this interplay between what state law actually required and whether or not this was actually this actual directive that was issued by the judge to the circuit clerk. Now, all of that aside, there was an important point that came up earlier, which is what state law requires or doesn't require. In our view, we've submitted that regardless of what state law requires or doesn't require. And I agree with Judge Benton that there's nothing in the statute that essentially prohibited Miss Chapman from doing this or the judge from doing this. The salient question is whether the constitutional question before Miss Chapman in the court was beyond debate. We don't believe it was. And on this notion of just because Congress provided a remedy in 1983, they abolished immunities like qualified immunity. That just isn't the case. And then one final point. We did cite the Smith v. Arrentine decision on page 14 of our brief. And in fact, we did say that this kind of in our view, this kind of inconclusive evidence isn't sufficient to create a gender disputed material fact. But again, we're willing to assume that if you would prefer to move to qualified immunity analysis. And for those reasons, your honors, we respectfully request that the district court's judgment be reversed. Thank you.